IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS | ) | 3:21-mj-2679 |
| | ) | Magistrate Judge Frensley |
| LISA EISENHART | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
MOTION FOR DETENTION**

Defendant Lisa Eisenhart, through counsel, submits the following in response to the Government's Motion for Detention and Memorandum in Support Thereof.

**Procedural history**

On January 15, 2021, the District of Columbia District Court issued a Criminal Complaint against and arrest warrant for Eisenhart in case number 1:21-mj-00071 (docket at 1). The Complaint alleges that Eisenhart and her son, Eric Munchel, committed the following crimes: a) Conspiracy, b) Civil Disorders, c) Restricted Building or Grounds, and d) Violent Entry or Disorderly Conduct. The following day, Eisenhart surrendered herself to the FBI and has remained in custody since (docket at 1). Eisenhart appeared before this Honorable Court for her initial appearance on January 19, 2021, at which point the government moved to detain her pending the trial of this matter (docket at 2). The government filed its Memorandum in Support of detention on January 22, 2021 (docket at 8).

The matter as pertaining to Eisenhart is set for a detention hearing and a preliminary hearing[1] on January 25, 2021 at 1:00pm.

Munchel appeared before the Court for his preliminary and detention hearings on Friday, January 22, 2021.  The Court found probable cause as to the allegations in the Complaint against Munchel.  The Court further ordered that Munchel be released from custody pre-trial with specific conditions designed to assure his appearance and protect the safety of the community.  The government filed a Stay of the Munchel Release Order on Sunday January 24, 2021.  The District Court Judge in the District of Columbia Granted the government's request for a Stay on Sunday afternoon.

**Eisenhart Poses Less of a Flight Risk or a Danger than Munchel**

While this Court's decision to release Munchel was sound and grounded in applicable law and facts (and at this point has not been reversed, only Stayed), in light of the entry of the Stay it is important to note that Eisenhart is an even better candidate for pre-trial release than Munchel.

There is no evidence that Eisenhart possessed multiple weapons/long guns in her home (or at all), owned any of the "tactical gear" described in the Complaint, "stashed" any weapons prior to entry into the Capitol or carried a taser into the Capitol.  Certainly, there is less evidence that Eisenhart poses a danger to the community.

Similarly, there is also less evidence that Eisenhart is a flight risk.  Eisenhart was in constant contact with the FBI during their investigation of her, repeatedly seeking out the Nashville case agent to determine if she should surrender herself.  Further,

---

[1] The matter is also set for an identity hearing.  Eisenhart intends to waive the identity hearing.

{02170298.2 } 2

Eisenhart has no criminal record, a 56-year track record of being non-violent and compliant with the law, and a 30-year nursing career.

**Pre-trial Release Analysis**

Pre-trial detention is governed by 18 U.S.C. 3142. Based upon the allegations in the Criminal Complaint, there is no rebuttable presumption of detention per 18 U.S.C. 3142(e)(3). As such, the government bears the burden to convince the Court that the defendant should not be released on her own recognizance, and/or that there is no set of conditions that can reasonably assure the appearance of the defendant and protect the safety of the community. 18 U.S.C. 3142 (b) and (c).

- **The Court should release Mrs. Eisenhart on her own recognizance without a detention hearing**

Absent a statutory presumption, the Court should release the Defendant on her own recognizance unless the government can make the required showing in 18 USC 3142(f) that a detention hearing is warranted. In support of its position that it is entitled to a detention hearing, the government cites to three (3) separate statutory bases as outlined in 18 U.S.C. 3142(f) by which it contends the Court should undertake the detention analysis required by 18 U.S.C. 3142(g) instead of releasing Eisenhart on her own recognizance.

1. **18 U.S.C. 3142(f)(1)(A), alleging the offense is a "crime of violence."**

The prosecutor contends that 18 U.S.C. 1752(a) when combined with a "dangerous weapon" as contemplated by 1752(b)(1)(A) is a "crime of violence." The

prosecution further contends that the Court could find probable cause of either of 18 U.S.C. 1752(a)(1)-(3). 18 U.S.C. 1752 provides as follows:

**§ 1752. Restricted building or grounds**
 **(a)** Whoever--
**(1)** knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
**(2)** knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
**(3)** knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstructs or impedes ingress or egress to or from any restricted building or grounds; or[1]
**(4)** knowingly engages in any act of physical violence against any person or property in any restricted building or grounds;
**(5)** knowingly and willfully operates an unmanned aircraft system with the intent to knowingly and willfully direct or otherwise cause such unmanned aircraft system to enter or operate within or above a restricted building or grounds;
or attempts or conspires to do so, shall be punished as provided in subsection (b).
**(b)** The punishment for a violation of subsection (a) is--
**(1)** a fine under this title or imprisonment for not more than 10 years, or both, if--
**(A)** the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm; or
**(B)** the offense results in significant bodily injury as defined by section 2118(e)(3); and
**(2)** a fine under this title or imprisonment for not more than one year, or both, in any other case.

To evaluate whether a statute is a "crime of violence," 18 U.S.C. 16 provides:

The term "crime of violence" means--
**(a)** an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
**(b)** any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Courts have further explained, providing "Pursuant to plain meaning of Bail Reform Act, decision as to whether offense qualified as "crime of violence," thereby triggering pretrial detention hearing, had to be resolved via categorical approach by

reference to elements of offense, rather than on case-by-case basis, and therefore factual circumstances of particular case would be irrelevant until hearing on issue of whether detention was warranted." U.S. v. Singleton, C.A.D.C.1999, 182 F.3d 7, 337 U.S.App.D.C. 96.

The elements of the statute relied upon by the government require proof of entry into the Capitol or generally some sort of "disruption" or "disorderly conduct." See 18 U.S.C. 1752 (a)(1)-(3). Respectfully, there is nothing in the elements of the cited statutory language that support the proposition that 1752 (a)(1)-(3) are "crimes of violence." The same is true for the government's allegation that the "possession of a dangerous weapon," specifically the taser carried at Munchel's waist, gives rise to a claim that the elements of the statute justify a conclusion that this statute is a "crime of violence." The government, who bears the burden, cites no case that has ever held that 18 U.S.C. 1752(a)(1)-(3) are crimes of violence, regardless of how it is punished.

Notably, 18 U.S.C. 1752(a)(4) does require a finding of physical violence, and therefore would be a "crime of violence." However, the government has not argued that this statute applies to Eisenhart's conduct. The fact that there is a specific statutory basis for alleging a "crime of violence" that was not pursued by the government leads to the conclusion that the remaining bases in the statute are not "crimes of violence."

### 2. **18 U.S.C. 3142(f)(1)(E), alleging the offense is a felony that involves a "dangerous weapon."**

As above, the government relies upon the taser gun carried by Munchel to allege that a violation of 18 U.S.C. 1752 (a)(1)-(3) is not punished as a misdemeanor but instead as a felony because the offense involves a "dangerous weapon." 18 U.S.C. 1752(b)(1). However, to prevail under this theory as to Eisenhart, the government must

show that there is probable cause that Eisenhart and Munchel entered into a conspiracy to bring the taser into the Capitol and violate section 1752(a)(1)-(3).  The allegations in the Affidavit in support of the criminal complaint and the government's Memorandum in Support of Detention, as well as the testimony from the FBI agent in Munchel's probable cause/detention hearing, establishes that such probable cause does not exist.  Indeed, the evidence in the record to date indicates that Eisenhart was adamant that no weapons be brought into the Capitol.  The government alleges that Eisenhart and Munchel approached the Capitol, then decided to retreat to a separate area outside the Capitol to rid themselves of any weapons; the government further alleges that Eisenhart and Munchel did in fact retreat from the Capitol, where Munchel placed some items (the government was not able to produce any direct evidence as to what those items were) in a backpack.  As such, the evidence has shown that Eisenhart neither carried any dangerous weapon into the Capitol nor did she conspire with Munchel to do the same.

If the government is unable to prove to a probable cause standard that Eisenhart conspired to bring the taser into the Capitol, it cannot proceed towards detention under this theory.

3. **18 U.S.C. 3142(f)(2)(A)(3), alleging the Defendant is a "substantial risk of flight."**

The government offers no justification for this allegation other than its assertion that Eisenhart "faces a significant statutory maximum penalty if she is convicted of the charges in the complaint."  This bare allegation is insufficient.  Indeed, nearly every federal criminal defendant faces "significant statutory maximum penalties" if convicted.  However, the government is well aware that the legal principles of grouping and the

likely advisory guideline range upon conviction makes it extraordinarily unlikely that Eisenhart faces anywhere near the 20 years that the government threatens.

Further, the proof already in the record is that Eisenhart has no criminal history and immediately turned herself into authorities upon the warrant being issued for her arrest. The government even concedes that the "history and characteristics" factor of the detention analysis weighs in her favor. In further support, Eisenhart has a 30-year career as a RN, has no violent history, has a stable support system, and was very proactive about staying in contact with law enforcement after the media blitz regarding her likely future need to surrender herself.

Based upon the statutory bases provided by the government, there is insufficient evidence to conduct the detention analysis outlined in 18 U.S.C. 3142(g) and the Court should release Eisenhart on her own recognizance.

- **The 3142(g) Factors Support Release**

Should the Court conclude that the government has met its burden under 18 USC 3142(f), the factors the Court must consider in 18 U.S.C. 3142(g) support the release of Eisenhart.

**Nature and Circumstances of the Offense**

This factor weighs in favor of release. The proof in the record is that, unlike several other individuals not known by or affiliated with Eisenhart, Eisenhart did not make a specific plan to breach the Capitol, commit violence, possess a weapon, vandalize, assault, steal, enter private offices, view secret or classified materials, or take

any action other than what is reflected in the I-phone video viewed by the Court during the Munchel hearing.

**Weight of the Evidence**

This factor also weighs in favor of release. While the government will produce evidence that Eisenhart entered the Capitol, this allegation alone would result in primarily misdemeanor charges. The government through its charging decisions in the Complaint seeks more serious charges. However, many of the charged offenses pursued by the government require an element of possession and/or conspiracy to possess a dangerous weapon, proof of which is lacking.

Further, while potential defenses are not required to be resolved by this Court, they should be considered regarding weight of the evidence. Eisenhart clearly will have a basis to argue that her conduct was protected by the First Amendment through challenges to the statutes at issue. Further, Eisenhart and others similarly situated, i.e. those who entered the Capitol but committed no violence, will likely have an "estoppel by entrapment" defense.

"Estoppel by entrapment" arises from the Due Process clause and was established by the U.S. Supreme Court in *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959) and *Cox v. State of La.*, 379 U.S. 559, 571, 85 S. Ct. 476, 484, 13 L. Ed. 2d 487 (1965). To prove the defense, "a defendant must show that: (1) a government agent announced that the charged conduct was legal; (2) the defendant relied on the agent's announcement; (3) the defendant's reliance was reasonable; and (4) given the defendant's reliance, prosecution would be unfair." *United States v. Triana*, 468 F.3d

308, 316 (6th Cir. 2006) (citing *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992)).

In the months before the 2020 presidential election, then-president Donald Trump began publicly pronouncing that his supporters should be concerned about voter fraud contaminating the 2020 election[2]. Immediately after it became apparent that then-president Trump lost the 2020 presidential election, Mr. Trump ramped up the rhetoric, accusing his political opponents of "stealing" the election/presidency and perpetrating a massive fraud upon the citizens of the United States[3]. Then-president Trump continued to repeat these allegations and asked his supporters to come to a rally on January 6, 2021 in Washington DC in order to protest the certification of the electoral college vote declaring President Biden as the victor[4]. Mr. Trump, still the President of the United States at the time, told his supporters (and the entire world) that the purpose of the rally was to "save America", "stop the steal", and used incendiary language about the pending doom of the country should Mr. Biden assume the presidential role[5]. While at the rally, Mr. Trump continued his inflammatory rhetoric, telling his supporters both at the rally and on Twitter in the days before that it was imperative that they rise up to "stop the steal" and that they should march to the Capitol alongside then-president Trump to show strength and "provide strength" to Republican legislators planning to vote against certification of the electoral college votes[6].

---

[2] https://www.reuters.com/article/us-usa-election-protests-idUSKBN29B24S
https://www.nytimes.com/2021/01/06/us/politics/capitol-mob-trump-supporters.html

[3] Id.
[4] Id.
[5] Id.
[6] The full text is found here: https://www.rev.com/blog/transcripts/donald-trump-speech-save-america-rally-transcript-january-6

{02170298.2 }9

Clearly, the individuals who travelled to Washington D.C. at then-president Trump's behest heard the call from the commander-in-chief and head of the executive branch of the Federal Government.

Afterwards, the legislative branch took note of then-president Trump's role in this matter. The House of Representatives impeached[7] Mr. Trump over this conduct and specifically accused him of inciting an insurrection. The leader of the Senate Mitch McConnell issued a scathing statement[8] blaming Mr. Trump, stating that the attendees "were provoked by the president and other powerful people."

Eisenhart and those situated similarly will be able to assert and rely upon the defense of entrapment by estoppel.

**History and Characteristics of the Defendant**

The government asserts in its Memorandum that this factor weighs in support of release. Eisenhart agrees. As noted above, the proof already in the record is that Eisenhart has no criminal history and immediately turned herself into authorities upon the warrant being issued for her arrest. Eisenhart has a 30-year career as a RN, has no violent history, has a stable support system, and was very proactive about staying in contact with law enforcement after the media blitz regarding her likely future need to surrender herself.

---

[7] https://www.congress.gov/bill/117th-congress/house-resolution/24/text
[8] https://www.npr.org/sections/insurrection-at-the-capitol/2021/01/19/958410118/this-mob-was-fed-lies-mcconnell-rebukes-trump-for-his-role-in-capitol-riot

**Danger to the Community**

This factor also weighs in favor of release. While the government argues summarily that Eisenhart poses a danger to the general public due to her "dangerousness," this position is not supported. There is no indication of any dangerous or violent tendencies in Eisenhart's background. As noted, she has no criminal history and is not involved in any criminal or dangerous organizations. While the government attempts to make much of her "dangerous behavior" at the Capitol, the proof does not support a finding that by entering the Capitol unarmed without permission and committing no violent or destructive acts whatsoever, she is therefore so "dangerous" that she cannot be trusted to interact with the public safely, despite her apparently doing so for 56 years of her life without incident.

**Conclusion**

Eisenhart respectfully requests that she be released from custody on her own recognizance. Should the Court elect to impose restrictions, Eisenhart agrees to accept the conditions imposed by the Court in lieu of continued custody.

                                            **Respectfully submitted,**

                                            **/s/ Jonathan P. Farmer**
                                            Jonathan P. Farmer (BPR 020749)
                                            511 Union St, Suite 1000
                                            Nashville, TN 37219
                                            (P) 615-238-6300
                                            jfarmer@bonelaw.com
                                            *Counsel for Lisa Eisenhart*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 25, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to all attorneys of record.

                                           ***/s/ Jonathan P. Farmer***
                                              Jonathan P. Farmer