**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| **v.** | **Case No. 1:21-cr-118-RCL-2** |
| **LISA MARIE EISENHART**, | |
| *Defendant.* | |

## MEMORANDUM OPINION AND ORDER

In *United States v. Munchel*, No. 21-cr-118 (RCL), 2021 WL 620236 (D.D.C. Feb. 17, 2021), this Court ordered Eric Gavelek Munchel and Lisa Marie Eisenhart detained pending trial, finding that no condition or combination of conditions of release would reasonably assure the safety of the community. *Id.* at *8. But the D.C. Circuit remanded for additional consideration of whether defendants "present[ed] an identified and articulable threat to the community." *United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021). On remand, the United States withdrew its motion for pretrial detention. ECF No. 59. The Court accordingly ordered Munchel and Eisenhart's release pending trial subject to a plethora of special conditions. *See* ECF Nos. 60, 61, 62. Munchel and Eisenhart consented to the conditions imposed. ECF No. 59 at 2.

Eisenhart now moves to modify the conditions of her release. ECF No. 81. Specifically, she asks that the Court remove the electronic monitoring and curfew[1] conditions in her pretrial

---

[1]
 While Eisenhart describes this condition as a "curfew" requirement, the release order actually imposes "home detention" and states:

> "You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer."

ECF No. 62 at 2.

release order. ECF No. 81 at 1. The United States Pretrial Officer assigned to her case supports the removal of these conditions. *Id.* And Eisenhart contends that removing these conditions would not only save money and time but that Eisenhart would also "benefit from a release that will better allow for exercise and other routine activities of daily life." *Id.* The government opposes Eisenhart's motion and notes that her release was subject to a series of special conditions for the purpose of protecting the safety of the community. *See* ECF No. 85 at 4. The government also contends that the Bail Reform Act factors do not support the removal of these conditions. *Id.* (citing 18 U.S.C. § 3142(g)).

In reply, Eisenhart criticizes the government for relying on factors that the D.C. Circuit found were insufficient to support her detention. ECF No. 86 at 1–2. She argues that restrictions on her liberty based on dangerousness must be supported by clear and convincing evidence of an articulable threat. *Id.* at 1–2. And she argues that the equities have shifted in her favor with her record of compliance and the support of her pretrial officer. *Id.* at 2–3.

Upon consideration of the parties' filings, ECF Nos. 81, 85, & 86, and the entire record herein, the Court will **DENY** Eisenhart's motion to modify the conditions of her release. The Court stands by its previous analysis under the Bail Reform Act and concludes that home detention and location monitoring are necessary to reasonably assure the safety of the community.

*       *       *

The Bail Reform Act provides the relevant standard for evaluating Eisenhart's motion. Upon a determination that personal recognizance would not reasonably assure the safety of any other person and the community, the Court must order the pretrial release of the person

> (A) subject to the condition that the person not commit a Federal, State, or local crime . . . ; and

> (B) subject to the least restrictive further condition, or combination

> of conditions, that such judicial officer determines will reasonably
> assure the appearance of the person as required and the safety of any
> other person and the community, which may include . . . [any of the
> thirteen possible conditions listed] or any other condition that is
> reasonably necessary.

18 U.S.C. § 3142(c)(1). The Bail Reform Act states that "in determining whether there are

conditions of release that will reasonably assure . . . the safety of any other person and the

community" the Court should consider four factors: (1) "the nature and the circumstances of the

offense charged," (2) "the weight of the evidence against the person," (3) "the history and

characteristics of the person," and (4) "the nature and seriousness of the danger to any person or

the community that would be posed by the person's release." § 3142(g)(1)–(4). The Court "may

at any time amend the order to impose additional or different conditions of release." § 3142(c)(3).

    The Court has previously applied the § 3142(g) factors to Eisenhart and will incorporate

its prior analysis here. In its prior Memorandum Opinion, the Court found that the circumstances

of Eisenhart's offense weighed in favor of her detention. *Munchel*, 2021 WL 620236, at *7.

Eisenhart "aided and abetted Munchel in unlawfully . . . and violently entering the Capitol while

carrying a dangerous weapon." *Id.* The two wore tactical vests to the Capitol and carried "plastic

handcuffs into the Senate gallery." *Id.* at *2. The conduct in which she and Munchel engaged

"demonstrates a flagrant disregard for the rule of law." *Id.* at *6. Next, the weight of the evidence

of Eisenhart's dangerousness is largely undisputed. Munchel's iPhone video documented

Eisenhart's actions and statements on January 6, and the media recorded her unrepentant

statements. *Id.* at *8. While her history and characteristics weigh in her favor, the Court also

found that Eisenhart's statements after the riot indicated her willingness to undertake similar

actions again. *See id.* ("I'd rather die as a 57-year-old woman than live under oppression. I'd

rather die and would rather fight."). Finally, the Court explicitly found that "Eisenhart's

willingness to die for her cause indicates that release conditions" were unlikely to be effective: "If Eisenhart does not fear the ultimate consequence, the consequences for disobeying release conditions are unlikely to deter her." *Id.*

Eisenhart's pretrial detention is not an issue currently before the Court. But for the same reasons that they support pretrial detention, the aforementioned factors also weigh in favor of stringent release conditions. Eisenhart's actions on January 6 not only demonstrate a blatant disregard for the rule of law, but her subsequent statements also indicate her willingness to engage in similar conduct again. And the Court remains concerned that the consequences for disobeying release conditions may not deter her. Home detention and electronic monitoring requirements are conditions that reasonably assure the safety of others and the community by preventing her from again engaging in similar politically motivated violence and ensuring her compliance with the other conditions in the release order. Indeed, it is notable that Eisenhart *consented* to these conditions. *See* ECF No. 59 at 2. She has thus previously recognized that these conditions bear a relationship to protecting the public safety.

Eisenhart's arguments to the contrary are meritless. Start with her reliance on the D.C. Circuit's decision in *Munchel*. She suggests that to justify the release conditions at issue, the government must show by "clear and convincing evidence" that she presents an "identifiable and articulable threat." *See* ECF No. 86 at 1–2. That is incorrect. As reflected by the text of the Bail Reform Act, the clear and convincing evidence standard applies in the context of *detention* decisions. *See* § 3142(f)(2) ("The facts the judicial officer uses to support a finding pursuant to subsection (e) that *no condition or combination of conditions* will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."). Eisenhart grossly overstates the relevant standard for considering whether a particular condition

of release should be imposed.  Instead, the relevant statute requires the Court to determine the "least restrictive further condition, or combination of conditions, that . . . will reasonably assure . . . the safety of any other person and the community."  § 3142(c)(1)(B).

Next, Eisenhart minimizes the significance of the Court's prior § 3142(g) findings by arguing that they fail to manifest an identifiable, "prospective" threat required by *Munchel*.  But this argument is based on a faulty premise—that *Munchel*'s holding extends outside of the detention context.  *See Munchel*, 991 F.3d at 1283 (explaining that "to order a defendant *preventatively detained*, a court must identify an articulable threat posed by the defendant to an individual or the community" by clear and convincing evidence (emphasis added)).  And to the extent that Eisenhart argues that the Court cannot rely on its prior analysis to determine future dangerousness, that argument also has no basis in *Munchel*.  The Circuit has made clear that it "*did not* hold in *Munchel* that only those persons who participated in violence on January 6 could properly be considered as posing a future danger to the community . . . ."  *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (emphasis added).  Indeed, that is the reason that the Circuit remanded for reconsideration, rather than reversing outright.  *Id.* Instead, the Circuit has emphasized that a defendant's conduct on January 6 and any statements after that day *are relevant* to the analysis under § 3142(g).  *See, e.g.*, *id.* at 456–57 (affirming detention decision based in part on defendant's violent language and statements expressing his desire for "civil war").

While the decision to detain a defendant pending trial requires clear and convincing evidence of "identifiable and articulable threat," the Court has already explained that it is not considering Eisenhart's detention.  The Court must determine what constitute the least restrictive conditions for ensuring the safety of the community.  Eisenhart previously recognized that home detention and location monitoring serve that purpose.  *See* ECF No. 59 at 2.

Applying the proper legal standard, Eisenhart's arguments fall short. Eisenhart contends that the equities have shifted in her favor because she has been compliant pending trial and because her pretrial officer recommends that these conditions are removed. ECF No. 81 at 1. The Court *expects* Eisenhart to comply with the conditions of her release. Home detention reasonably assures that Eisenhart will not again engage in similar politically motivated violence as she did on January 6. And location monitoring ensures that Eisenhart will *continue* to be compliant with the other conditions of her release.

There is no new mitigating information about the circumstances of Eisenhart's offense or a concession from the government that home detention is unnecessary to protect the public in this case. And the Court based its previous dangerousness determination on Eisenhart's expressed lack of fear of any ultimate consequence.[2] The Court remains unconvinced that Eisenhart's compliance up until this point in this case and the pretrial officer's recommendation are sufficient to overcome the Court's prior conclusions under § 3142(g).

## CONCLUSION

Based on the foregoing, the Court will **DENY** Eisenhart's motion to modify the conditions of her release.

Date: _____ 5/10/21 _____

Royce C. Lamberth
United States District Judge

---

[2] For these reasons, the case on which Eisenhart relies, *United States v. Brock*, No. 21-cr-140 (JDB), 2021 WL 3616892 (D.D.C. Aug. 16, 2021), is distinguishable. *See* ECF No. 86 at 3.