## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 1:21-cr-118 (RCL)** |
| | : | |
| **LISA EISENHART,** | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF RESENTENCING

Lisa Eisenhart ("Eisenhart"), a nurse from Tennessee, wearing a ballistic vest, joined the violent mob which attacked the United States Capitol in an effort to disrupt the peaceful transition of power on January 6, 2021, making it as far as the Senate Gallery, which she entered holding zip tie handcuffs. For her disorderly and disruptive conduct, breach of the Senate Gallery, and efforts overturn the election results, this Court sentenced Eisenhart to serve 30 months' incarceration. As this Court found at the sentencing hearing, this defendant's conduct was of the utmost seriousness and the 30-month sentence imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a).. While one of Eisenhart's convictions was vacated after *Fischer*, her criminal conduct remains the same. *See United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5 (cleaned up) ("*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021, in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct."). Accordingly, for the reasons set forth herein, the United States requests that this Court resentence Eisenhart to 30 months of incarceration followed by one-year supervised release/probation, $2,000 in restitution, and a mandatory assessment of $80 ($25 per Class A misdemeanor and $10 per Class B misdemeanor).

I.      FACTUAL BACKGOUND

        a.  Defendant Eisenhart's Role in the Capitol Attack

Eisenhart's role in the Capitol attack has been well documented. The Government need not recount it at length here and refers the Court to the Government's 2022 Sentencing Memo for a full discussion of Eisenhart's criminal conduct. *See* ECF No. 221 ("Government's 2023 Sentencing Memo"). In summary of its original memo, the government highlights the most egregious moments of Eisenhart's actions on January 6, 2021 below:

Eisenhart, along with her son, prepared for violence on January 6 and projected her willingness to engage in it. Throughout the day, Eisenhart was dressed in a tactical vest and encouraged other rioters to fight police. For example, while on restricted grounds, Eisenhart cheered for violence against police yelling, "Fight 'em, don't let 'em in! Fight 'em, don't let them in! Don't let them in!" Eisenhart then yelled, "Push, push!" referring to rioters' efforts to break through the police lines. Eisenhart also yelled "We can't let them get a hold, because they're going to gas us out!" Exhibit 301 at 1:57, 3:45, and 4:00, respectively. While watching the battle, someone near the duo yelled out, "we broke the line up there." In response, the crowd cheered and Eisenhart bellowed, "Let's go, let's go!" *Id*. at 10:50-11:20. Before starting their climb to the building's exterior, Eisenhart and Munchel ditched a backpack after Eisenhart warned "We're going straight to federal prison if we go in there with weapons." Exhibit 301 at 12:00-12:35.

As she climbed steps leading to the Capitol, Eisenhart exclaimed, "Stop the Steal." Exhibit 301 at 35:10-35:15. Eisenhart and Munchel unlawfully entered the U.S. Capitol building despite blaring alarms and other signs that their presence was forced and illegal. Inside, Eisenhart and Munchel made their way to the third floor. As she climbed the stairs to the third floor, Eisenhart chanted "Treason!" and yelled "Treasonous bastards!" referring to members of Congress. Exhibit

301 at 41:39-41:44. Eisenhart was then handed zip tie handcuffs, stolen from U.S. Capitol Police ("USCP") storage. Eisenhart roamed the Capitol building for 12 minutes, penetrating all the way to the Senate Gallery. Eisenhart carried the zip tie handcuffs into the Senate Chamber, implicitly threatening members of Congress and physically preventing them from using the Senate Chamber. While in the Gallery, Eisenhart chanted "Treason!" Exhibit 301 at 45:00-45:30. On January 7, 2021, she openly declared to a reporter that their intent in storming and entering the Capitol was to intimidate Congress: "This country was founded on revolution. If they're going to take every legitimate means from us, and we can't even express ourselves on the internet, we won't even be able to speak freely, what is America for? I'd rather die as a 57-year-old woman than live under oppression. I'd rather die and would rather fight." Exhibit 601.

## II.    Relevant Procedural History

For her conduct, Eisenhart was charged with Conspiracy to Commit Obstruction, in violation 18 U.S.C. § 1512(k) (Count 1); of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), and 2 (Count 2); Entering and Remaining in a Restricted Building and Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 4); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 6); Entering and Remaining in the Gallery of Congress, in violations of 40 U.S.C. § 5104(e)(2)(B) (Count 8); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 9); Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count 10).

On April 18, 2023, following a stipulated bench trial, this Court convicted Eisenhart of all counts charged. On September 26, 2023, this Court sentenced Eisenhart to concurrent incarceration terms of: 30 months on Count 1 (Conspiracy to Commit Obstruction) and 30 months on Count 2

(Obstruction of Congress), 12 months on Count 4 (Entering and Remaining in a Restricted Building) and 12 months on Count 6 (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), and 6 months on Counts 8, 9, and 10, $2,000 restitution, and $510 in special assessment fees. *See* ECF 231.

### III.       Defendant Eisenhart's First Sentencing Hearing

During Eisenhart's initial sentencing in 2023, the then-applicable United States Sentencing Guidelines (U.S.S.G. or "Guidelines") took into account not only the seriousness of her five misdemeanor convictions, but also the totality of her conduct and the relevant surrounding circumstances – Eisenhart trespassing on Capitol grounds while wearing a tactical vest, making colorful commentary to other rioters encouraging violence, and breaching the Senate Gallery with zip tie handcuffs – all with the intent to obstruct the certification and stop the peaceful transfer of presidential power for the first time in the history of American democracy.

#### a.   The Guidelines Calculation at the Original Sentencing

At sentencing, the applicable sentencing guidelines range was driven by Counts One and Two. Eisenhart's offense level for Counts One and Two was calculated, with acceptance of responsibility, at a 22. With no prior criminal history, the guidelines range for Eisenhart was originally 41-51 months.

### IV.       Appeal

On June 28, 2024, the Supreme Court issued an opinion in F*ischer v. United States*, 144 S. Ct. 2176 (2024). Based on the *Fischer* decision, on November 20, 2024, the D.C. Circuit vacated Eisenhart's convictions under Counts One and Two and remanded her case to the Court for further proceedings. *See* ECF No. 270. Eisenhart had remained released pending the outcome of her appeal. Prior to her stipulated trial and sentence, Eisenhart served approximately 3 months in

custody which the Court credited at the time of her sentencing. The Court indicated that Eisenhart's sentence would be impacted, to her benefit, in the event Counts One and Two were ever vacated. *See* ECF No. 264 at 7.

## V.    Resentencing Calculations and Considerations
### a.  Statutory Penalties

Eisenhart faces resentencing on the remaining five counts of the Indictment which carry the following penalties:

- Count Four (Entering and Remaining on a Restricted Building of Grounds): up to one year imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25.

- Count Six (Disorderly and Disruptive Conduct in a Restricted Building or Grounds): up to one year imprisonment, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25.

- Count Eight (Entering and remaining on the Floor of Congress): up to six months imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

- Count Nine (Disorderly Conduct in a Capitol Building): up to six months imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

- Count Ten (Parading, Demonstrating, or Picketing in a Capitol Building): up to six months imprisonment, a fine up to $5,000, and a mandatory special assessment of $10.

### b.  The Revised Guidelines Analysis

The Guidelines calculations, without consideration of the Section 1512(c)(2) conviction, are as follows:

**Count One (1752(a)(1))**
Base Offense Level (U.S.S.G. §2B2.3(a))                                    4
Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A))        <u>+2</u>

Total                                                                                6

**Count Two (1752(a)(2)**

Base Offense Level (U.S.S.G. 2A2.4(a))                                  10

Total                                                                             **10**

Counts Eight, Nine, and Ten are Title 40 misdemeanors to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9.

### c. Grouping Analysis

Under U.S.S.G. § 3D1.2(a)-(c), "closely related counts" group. Here, the violations of 18 U.S.C. § 1752(a)(1) and 18 U.S.C. § 1752(a)(2) group because they have the same victim – Congress. *See* U.S.S.G. § 3D1.2(a) and (b). The offense level for that Group is "the highest offense level of the counts in the Group," pursuant to U.S.S.G. § 3D1.3(a). Here, the highest offense level is 10, so the offense level for the Group is 10.

### d. Acceptance of Responsibility

Eisenhart did accept responsibility in the sense she proceeded by way of an uncontested stipulated trial, rather than a bench or jury trial, and continued to show accountability at her original sentencing. Based on the offense level driven by Counts One and Two, the government previously agreed to a three-point reduction for acceptance. Due the change in the offense level, Eisenhart is now entitled to a two-point reduction, bringing the offense level to an 8.

### e. Inapplicability of U.S.S.G. § 4C1.1 (Adjustment for Certain Zero-Point Offenders)

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who

have no criminal history points and who meet certain additional criteria.

Section 4C1.1 does not apply in this case, because Eisenhart used "violence or credible threats of violence in connection with the offense[s]," in contravention of U.S.S.G. § 4C1.1(a)(3). As discussed in Section I-a, Eisenhart was wearing a tactical vest as she encouraged the violence against law enforcement unfolding around her on Capitol grounds. Eisenhart also celebrated after hearing misinformation that Congressional members had been gassed which showed her support for violence against law makers – not just police. While inside, Eisenhart continued to exhibit a threat as she entered the Senate Gallery with zip-tie handcuffs, which this Court acknowledged was an implicit threat to legislators at her original sentencing hearing.

The analysis used above is also consistent with the analysis that at least one other court has used in considering the inapplicability of § 4C1.1 because the defendant engaged in a "credible threat of violence." *See United States v. Bauer,* No. 121CR003862TNM, 2024 WL 324234, at *3 (D.D.C. Jan. 29, 2024) ("a 'credible threat of violence' is a believable expression of an intention to use physical force to inflict harm."). Furthermore, the context in which defendant acted—encouraging violence and carrying zip ties into the Senate—made defendant's conduct even more threatening. *See United States v. Andrulonis*, No. 23-cr-085 (BAH), Sent. Tr. at 11-12 ("In evaluating whether credible threats of violence were posed by the defendant's offense conduct, to my mind, the context matters very critically. In other words, evaluating a defendant's offense conduct requires examination of all the factors of the offense including what the particular defendant being sentenced did; where he was; what he was seeing; what a person would reasonably understand was the volatility of the situation; the threat that whole situation would pose to others; the foreseeable harm of the situation; and the consequences of the specific defendant's individualized actions. So the fact that this defendant is not personally charged with assaulting or

attacking officers is, therefore, not sufficient to make him eligible for the zero criminal history score offense-level reduction.").

### f. Criminal History and Guidelines Range

The U.S. Probation Office previously calculated defendant's criminal history as Category I, based on a criminal history score of zero. With the two-point reduction for acceptance, Eisenhart's new offense level is an 8. The advisory guideline range is 0-6 months incarceration.

### g. The Government's Resentencing Recommendation

### i. An Upward Departure and/or Variance is Warranted

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). The Guidelines do not begin to capture the unprecedented and uniquely harmful nature of his crimes on January 6, which struck at the heart of our democracy and the rule of law. Eisenhart was an avid and willing participant in an unprecedented crime. She joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. Her offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Eisenhart "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent. Tr. 9/22/22 at 86-87. The government respectfully requests that the Court depart or vary upwards from the top of

the Guidelines range.

Nothing in Eisenhart's guidelines capture the unique nature of her crimes at the Capitol. Eisenhart would face the same offense level if her crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[1] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116 (DLF), Sent. Tr. at 85. A sentence within the defendant's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate

---

[1] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, 144 S. Ct. 2176 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

punishment for the offense. U.S.S.G. § 5K2.7.[2] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducting the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75 (RDM), Sent. Tr., at 67. Future generations will rightly ask what this generation did to prevent another such attack from occurring. "Violence risks begetting a vicious cycle that could threaten cherished conventions and imperil our very institutions of government. In that sense, political violence rots republics. Therefore, January 6 must not become a precedent for further violence against political opponents or governmental institutions. This is not normal. This cannot become normal. We as a community, we as a society, we as a country cannot condone the normalization of the January 6 Capitol riot." *United States v. Johnatakis*, 21-cr-91 (RCL) ECF No. 272 at 5. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. Eisenhart was determined to change the outcome of the democratic process by any means necessary, including threats and intimidation. *See United States v. Wyatt*, 23-CR-215 (RDM), Sent. Tr. at 44.

---

[2] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. History is not just the measure of events and the dates on which they occurred; history is the measure of how a society and its leaders choose to respond to those events to provide security, prosperity, and freedom to its posterity and, in doing so, form a more perfect union. Future generations will rightly ask what this generation and those who have filled these courtrooms did to prevent another such attack on our democracy from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime because it was not:

> "The effort undertaken by those who stormed the Capitol on January 6 […] was to stop the peaceful transfer of power following the legitimate outcome of our presidential election. That's a process that has been a hallmark of American democracy for 200 years. And that effort to reject the outcome of the 2020 presidential election involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."

*United States v. Languerand*, 21-CR-353 (JDB), Sent. Tr., at 33-34.

Indeed, even before *Fischer*, judges of this Court, gave significant upward departures and/or variances when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37 (TNM), Sent. Tr. 9/22/22; *United States v. Christian Secor*, 21-CR-157 (TNM), Sent. Tr. 10/19/22; *United States v. Hunter and Kevin Seefried*, 21-CR-287 (TNM). Sent. Tr. 10/24/22; *United States v. William Watson*, 21-CR-513 (RBW), Sent. Tr. 3/9/23; *United States v. Riley Williams*, 21-CR-618 (ABJ), Sent. Tr. 3/23/23; *United States v. Hatchet Speed*, 22-CR-244 (TNM), Sent. Tr. 5/8/23. Specifically, this Court has commented on the uniqueness of certain defendant's actions that put them at odds with their guidelines: "The guidelines do not adequately reflect that artifice that accompanied these crimes and empowered Mr. Sullivan to

brazenly encourage others during some of the worst moments of that day." *United States v. Sullivan*, 21-cr-78 (RCL) Sent. Tr. at 33.

Because the seriousness of Eisenhart's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. If the Court declines to depart, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed defendant's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence […] would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392 (RCL), ECF 507, Sent. Tr. at 4-5 (cleaned up).  Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks*, 21-CR-87 (TJK), Sent. Tr. at 95. *See also United States v. Kelly*, 21-CR-708 (RCL), ECF 151, Sent. Tr. at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6 (TJK), Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

In a recent resentencing, this Court has made clear its view that January 6 was an attempt to "thwart the peaceful transfer of power that is the centerpiece of our Constitution and the cornerstone of our republican legacy." *United States v. Grillo*, 21-cr-690 (RCL), Sent. Tr. at 32. Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot. Eisenhart contributed to the unprecedented nature of the events that day and the lawlessness that unfolded in the Capitol. But, also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[3]

In this case, the government submits that an upward variance or departure is warranted to reach an appropriate sentence. As discussed above, Eisenhart's conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Eisenhart used violent political rhetoric on January 6, entered the Senate with zip-tie handcuffs, and, in the aftermath, she doubled down on her actions in the media.

### h. Analysis of the 18 U.S.C. § 3553(a) Factors Remains the Same

As discussed above, the Guidelines range in the instant case is not an accurate reflection of the harm or gravity unique to the defendant's attempts to obstruction the certification of the 2020 presidential election, an attempt to undermine American democracy itself. The government refers the Court to its original sentencing memorandum (ECF No. 221) for a detailed discussion of the §3553(a) factors as applied to defendant Eisenhart. When considering the §3353(a) factors,

---

[3] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

departing, varying upward, and stacking Eisenhart's sentences consecutively for a total of 30 months' incarceration ensures an appropriate sentence. It is also a fair recommendation when considering this Court's previous post-Fischer resentencing hearings in *United States v. Grillo*, 21-cr-690 (RCL) and *United States v. Kelly*, 21-cr-708 (RCL).

In *Grillo*, the defendant, utilized a megaphone to make statements of encouragement, urging other rioters to "charge" forward. Ignoring the violence unfolding around him, Grillo breached the Capitol via a shattered window adjacent to the Senaratne Wing Doors. Like Eisenhart, Grillo traversed several floors of the Capitol. He spent fifty minutes at the East Rotunda Doors where he assisted other rioters breach the building. Grillo was convicted of violating §1512 along with four misdemeanors but by the time of sentencing, only the misdemeanors remained. The government sought 24 month's incarceration for Grillo based on his actions and false testimony at trial. Before sentencing Grillo to 12 months incarceration, this Court reflected on the spectrum of January 6 defendants, stating:

> Once inside, they did all manner of things. Some milled about rather aimlessly taking in the sights and congratulating one another. Others entered the offices of our elected representatives destroying and pilfering as they went. Some went onto the Senate floor, the very site where the election was about to be certified before the incursion where they gave speeches extolling their violent insurgency and celebrating their fleeting efforts to derail the onward march of American democracy.

Sent. Tr. at 33.

Eisenhart falls on the higher end of the spectrum. She too, like Grillo, encouraged others to engage in push efforts against police on Capitol grounds before breaching the building. However, unlike Grillo, Eisenhart came dressed for battle, donning her tactical vest. And, although his actions at the East Rotunda Doors were egregious in their own right, Grillo did not access the

same sensitive area as Eisenhart. Eisenhart descended the Senate Gallery, with zip-tie cuffs, after calling lawmakers treasonous. Thus, a higher sentence in this context is fair and just.

In *Kelly*, the defendant was part of the initial mob of rioters that breached the parliamentarian door, surged past several lines of police officers, and marched directly to the Senate Chamber. After trial, Kelly was convicted of § 1512 and five misdemeanors and sentenced to 30 months' incarceration, similar to that of Eisenhart's original conviction and sentence. Upon his post-Fischer resentencing, the government recommended that his initial sentence of 30 months' incarceration stand. This Court resentenced Kelly to 12 months' time served. Like Kelly, Eisenhart accessed the Senate, delaying the certification that was supposed to be taking place at the time of her presence. But Eisenhart donned a tactical vest and carried zip-tie handcuffs into the Senate gallery. And in *Kelly*, the Court recognized the relatively peaceful nature of Kelly once inside the Senate chamber. The same cannot be said of Eisenhart.

To the extent the Court declines the government's recommended degree of variance, the government nonetheless urges the Court to consider Eisenhart's conduct compared to Kelly or Grillo. While all three defendants were criminally culpable, they do not occupy the same spectrum. As discussed above, under §3553(a), Eisenhart's conduct is deserving of a more significant sentence.

## VI.    Legal Background on Consecutive Sentences

To achieve a sentence of 30 months of incarceration, the court would need to impose partially consecutive sentences on some counts. As this Court knows,  federal court "can typically choose whether to run" a defendant's "sentences concurrently or consecutively." *Lora v. United States*, 599 U.S. 453, 455 (2023); *see also Setser v. United States*, 566 U.S. 231, 236 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose

will run concurrently or consecutively with respect to other sentences that they impose . . . .").
While the Sentencing Guidelines default position is that sentences of imprisonment run
concurrently, "if the sentence imposed on the count carrying the highest statutory maximum is less
than the total punishment, then the sentence imposed on one or more of the other counts shall run
consecutively, but only to the extent necessary to produce a combined sentence equal to the total
punishment." U.S.S.G. § 5G1.2(d) (emphasis added); *see also United States v. Lafayette*, 337 F.3d
1043, 1050 & n.11 (D.C. Cir. 2003) (explaining that a court may impose consecutive or "stack[ed]"
sentences to achieve a total sentence in excess of the statutory maximum on a single count).

Moreover, "although the Guidelines should be the starting point and the initial benchmark,
district courts may impose sentences within statutory limits based on appropriate consideration of
all of the factors listed in § 3553(a)." *Pepper v. United States*, 562 U.S. 476, 490 (2011).
Specifically, 18 U.S.C. § 3584(a) provides that "[i]f multiple terms of imprisonment are imposed
on a defendant at the same time ... the terms may run concurrently or consecutively," while Section
3584(b) states that "[t]he court, in determining whether the terms imposed are to be ordered to run
concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment
is being imposed, the factors set forth in [18 U.S.C.] section 3553(a)." District Courts have
discretion to deviate "from the guidelines' recommendation that a defendant's sentences run
concurrently and to impose, instead, consecutive sentences after considering the § 3553(a) factors.
*United States v. Lymon*, 905 F.3d 1149, 1153 (10th Cir. 2018).

Here, the Section 3553(a) factors counsel that Eisenhart be sentenced to a term of
incarceration above the statutory maximum sentence for Counts Four and Six and that her sentence
of incarceration run consecutively for Counts our and Six, or by structuring the other counts
accordingly. As explained above, January 6 was an unprecedented event, and this defendant's role

was an integral one. The government is aware of at least one January 6 case where a defendant's sentence ran consecutively. *See United States v. Nordean*, et. al, 21-CR-175 (TJK), Sep. 5, 2023 Minute Order.

Here, to the extent the Court agrees with the government, it could structure the sentence as follows: Count One – 12 months' imprisonment; Count Two – 12 months' imprisonment; Count Three – 6 months' imprisonment; Count Four – 6 months' imprisonment. Counts One, Two, and Three should be run consecutive to one another. Count Four should be run concurrent to the remaining counts.

## VII.        Conclusion

For the reasons set forth above, and as fully supported by the facts and the law, the United States asks the Court to resentence defendant Eisenhart to a total sentence of 30 months' incarceration. The United States further asks the Court to reinstate the previously imposed one year term of supervised release, restitution of $2,000, and the mandatory special assessment for each of the counts of the remaining convictions.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    */s/ Rebekah E. Lederer*
REBEKAH E. LEDERER
Assistant United States Attorney
Pennsylvania State Bar No. 320922
601 D St., NW
Washington, D.C. 20530
(202) 252-7012
rebekah.lederer@usdoj.gov